# Exhibit C

| | |
|---|---|
| **AGREEMENT GRANTING RIGHTS TO DEBIT THE RUSSIAN ACCOUNT** | **ДОГОВОР О ПРЕДОСТАВЛЕНИИ ПРАВА БЕЗАКЦЕПТНОГО СПИСАНИЯ С РОССИЙСКОГО СЧЕТА** |
| **BETWEEN** | **МЕЖДУ** |
| **LIMITED LIABILITY COMPANY "INVESTMENT LOTTERY COMPANY"** | **ОБЩЕСТВОМ С ОГРАНИЧЕННОЙ ОТВЕТСТВЕННОСТЬЮ "ИНВЕСТИЦИОННАЯ ЛОТЕРЕЙНАЯ КОМПАНИЯ"** |
| **AND** | **И** |
| **COMMERCIAL BANK "OB'EDINENNYI INVESTITSIONNYI BANK" (LIMITED LIABILITY COMPANY)** in its capacity as Passport Bank | **ОБЩЕСТВОМ С ОГРАНИЧЕННОЙ ОТВЕТСТВЕННОСТЬЮ КОММЕРЧЕСКИМ БАНКОМ "ОБЪЕДИНЕННЫЙ ИНВЕСТИЦИОННЫЙ БАНК"** в качестве Паспортного Банка |
| **AND** | **И** |
| **Bipinchandra Shah (a/k/a BIPIN SHAH)** | **Бипинчандра Шах (известный также как БИПИН ШАХ)** |
| **29 July 2005** | **29 июля 2005 года** |

AGREEMENT GRANTING RIGHTS TO DEBIT THE RUSSIAN ACCOUNT

ДОГОВОР О ПРЕДОСТАВЛЕНИИ ПРАВА БЕЗАКЦЕПТНОГО СПИСАНИЯ С РОССИЙСКОГО СЧЕТА

PREAMBLE:

ПРЕАМБУЛА:

This **AGREEMENT GRANTING RIGHTS TO DEBIT THE RUSSIAN ACCOUNT** (this Agreement) is made on 29 July 2005 between:

Настоящий **ДОГОВОР О ПРЕДОСТАВЛЕНИИ ПРАВА БЕЗАКЦЕПТНОГО СПИСАНИЯ С РОССИЙСКОГО СЧЕТА** (настоящий Договор) заключен 29 июля 2005 года между:

(1) **Limited Liability Company ""Investment Lottery company""**, a limited liability company organized and existing under the laws of the Russian Federation, whose registered office is at Yana Rainisa Boulevard, Building 1, Moscow 125363, the Russian Federation (the **"Company"**)

(1) **Обществом с ограниченной ответственностью "Инвестиционная Лотерейная компания"**, обществом с ограниченной ответственностью, организованным и существующим в соответствии с законодательством Российской Федерации, с зарегистрированным офисом по адресу: Российская Федерация, г. Москва, 125363, бульвар Яна Райниса, д. 1 ("**Общество**").

(2) **Commercial Bank "Ob'edinennyi Investitsionnyi Bank" (limited liability company)**, a bank organized and existing under the laws of the Russian Federation in the form of a limited liability company, whose registered office is at 13 Donskaya Street, Building 1, Moscow 119049, the Russian Federation (the **"Passport Bank"**); and

(2) **Обществом с ограниченной ответственностью Коммерческим банком "Объединенный инвестиционный банк"**, банком, организованным и существующим в соответствии с законодательством Российской Федерации в форме общества с ограниченной ответственностью, с зарегистрированным офисом по адресу: Российская Федерация, г. Москва, 119049, улица Донская, дом 13, строение 1 ("**Паспортный Банк**"); и

(3) **BIPIN SHAH,** with offices at 425 East 58th Street, Suite 43H, New York, New York 10022, United States of America

(3) **БИПИН ШАХ,** с зарегистрированным офисом по адресу 425 East 58th Street, Suite 43H, New York, New York 10022, United States of America (Нью-Йорк, Соединенные Штаты Америки)

**THE PARTIES HAVE AGREED AS FOLLOWS:**

**СТОРОНЫ ПРИШЛИ К НИЖЕСЛЕДУЮЩЕЙ ДОГОВОРЕННОСТИ:**

**BACKGROUND OF THIS AGREEMENT (RECITALS):**

(A)    The Company, the Passport Bank, Shah, RLI and Metropol have entered into the Framework Agreement Relating to the Bridge Financing of the All-Russia Lottery, dated 29 July 2005 (the **"Framework Agreement"**), pursuant to which the Company has agreed, among other things, to operate and maintain a certain bank account with the Passport Bank in accordance with this Agreement, the Framework Agreement and applicable law.

(B)    Shah and RLI have entered into the Loan Agreement dated 29 July 2005 (the **"Loan Agreement"**), pursuant to which Shah has agreed to make available to RLI a term loan facility on the terms and subject to the conditions of the Loan Agreement.

(C)    Pursuant to the Framework Agreement, the Company has issued a guarantee to the benefit of Shah in respect of RLI's obligations under the Loan Agreement and, therefore, Shah is entitled to claim from the Company the funds in the amount of not less than three million US Dollars ($3,000,000) due from RLI to Shah pursuant to the terms and conditions of the Loan Agreement.

**ARTICLE I - DEFINITIONS AND INTERPRETATION**

**Section 1.01.    Definitions**

(a)    Capitalized terms used in this Agreement without definition have the meanings specified in the Framework Agreement.

(b)    In addition, whenever used in this Agreement the following terms have the meanings specified opposite them.

**ПРЕДИСТОРИЯ ЗАКЛЮЧЕНИЯ НАСТОЯЩЕГО ДОГОВОРА (ВСТУПИТЕЛЬНАЯ ЧАСТЬ):**

(A)    Компания, Паспортный Банк, Шах, RLI и Метрополь заключили Рамочный Договор в связи с промежуточным финансированием Всероссийской лотереи, датированный 29 июля 2005 года (**"Рамочный Договор"**), по условиям которого Общество согласилось, помимо прочего, оперировать и поддерживать определенный банковский счет в Паспортном Банке в соответствии с настоящим Договором, Рамочным Договором и применимым правом.

(B)    Шах и RLI заключили Договор Займа, датированный 29 июля 2005 года (**"Договор Займа"**), по условиям которого Шах согласилось предоставить RLI срочный кредит на условиях и положениях Договора Займа.

(C)    В соответствии с Рамочным Договором, Общество предоставило в пользу Шах гарантию исполнения обязательств RLI по Договору Займа, вследствие чего Шах вправе требовать от Общества сумму в размере не менее 3 000 000 (Трех миллионов) долларов США, подлежащую возврату от RLI в пользу Шах в соответствии с положениями и условиями Договора Займа.

**СТАТЬЯ I – ОПРЕДЕЛЕНИЯ И ТОЛКОВАНИЕ**

**Раздел 1.01. Определения**

(a)    Термины, приводимые в настоящем Договоре с заглавной буквы без определения, имеют значения, указанные в Рамочном Договоре.

(b)    Кроме того, при любом использовании в настоящем Договоре следующие термины имеют значения, указанные напротив них.

"**Agreement**" has the meaning given to that term in the Preamble.

"**Authority**" means an official or governmental body to which the Passport Bank is obliged by applicable law to provide information.

"**Bank Account Agreement**" means the following agreement between the Company and the Passport Bank pursuant to which the Russian Account has been opened and is maintained:

(i) Bank Account Agreement No. 1221 (in foreign currency), dated July 20, 2005 between the Company and the Passport Bank (the "**Bank Account Agreement in respect of the Dollar Account**"); and

(ii) Additional Agreement No. 1 to the Bank Account Agreement in respect of the Dollar Account, dated July 29, 2005, between the Company and the Passport Bank in respect of the System "Client-Obibank".

"**Currency Certificate for Standing Payment Order**" has the meaning given to that term in Section 4.03(d).

"**Currency Certificate for Payment Demand**" has the meaning given to that term in Section 6.01(c).

"**Dollar Account**" means current Dollar account No. 40702840800061002265 of the Company held in the Russian Federation with the Passport Bank.

"**Encumbrance**" means any type of security interest or rights, including any mortgage, pledge, charge, security assignment, title retention, and any other types of encumbrances or the granting of rights in assets to third parties, including any trust agreements or nominee holder

"**Договор**" имеет значение, присвоенное этому термину в Преамбуле.

"**Орган**" означает официальный или государственный орган, которому Паспортный Банк в силу применимого законодательства обязан предоставлять сведения.

"**Договор Банковского Счета**" означает следующий договор между Обществом и Паспортным Банком, в соответствии с которым открыт и ведется Российский Счет:

(i) Договор банковского счета № _____ (в иностранной валюте) от 20 июля 2005 года между Обществом и Паспортным Банком ("**Договор Банковского Счета в отношении Долларового Счета**"); и

(ii) Дополнительное Соглашение №1 к Договору Банковского Счета в отношении Долларового Счета от 29 июля 2005 года, между Обществом и Паспортным Банком в отношении системы "Клиент-Обибанк".

"**Справка о Валютных Операциях для Резервного Платежного Поручения**" имеет значение, данное этому термину в Разделе 4.03(d).

"**Справка о Валютных Операциях для Платежного Требования**" имеет значение, данное этому термину в Разделе 6.01(c).

"**Долларовый Счет**" означает текущий счет в долларах США № 40702840800061002265 Общества, открытый в Паспортном Банке в Российской Федерации.

"**Обременение**" означает любой вид обеспечения в отношении имущества или прав, включая ипотеку, залог, заклад, обеспечительную уступку, удержание права и любой иной вид обременения или предоставления прав на имущество третьи лицам, включая любые договоры траста или соглашения о номинальном

arrangements.

держателе.

"**Existing Loan Agreement**" means a loan agreement dated 27 May 2005, between RLI and the Company.

"**Существующий Договор Займа**" означает договор займа от 27 мая 2005 года, между RLI и Обществом.

"**Framework Agreement**" has the meaning given to that term in Recital (A).

"**Рамочный Договор**" имеет значение, данное этому термину в Введении (A).

"**Loan Agreement**" has the meaning given to that term in Recital (B).

"**Кредитный Договор**" имеет значение, данное этому термину во Вступительной части (B).

"**Metropol**" means Limited Liability Company "Investment Financial Company 'Metropol'" organized and existing under the laws of the Russian Federation, with an office at 13 Donskaya Street, Building 1, Moscow 119049, the Russian Federation.

"**Метрополь**" означает Общество с ограниченной ответственностью "Инвестиционная финансовая компания 'Метрополь'", организованное и существующее в соответствии с законодательством Российской Федерации, с офисом по адресу: улица Донская 13, Строение 1, Москва, 119049, Россия.

"**Moscow Business Day**" means a day (other than a Saturday or Sunday) on which commercial banks are open for the transaction of general business (including dealings in foreign exchange and foreign currency deposits) in Moscow, the Russian Federation.

"**Московский Рабочий День**" означает любой день (кроме субботы и воскресенья), в который коммерческие банки открыты для ведения общей коммерческой деятельности (включая сделки в иностранной валюте и валютные депозиты) в г. Москве, Российская Федерация.

"**Payment Demand**" means a written notice given to the Passport Bank by Shah pursuant to Section 6.01 in the form as provided by applicable law or, if such form is not provided thereby, in the form of Schedule 1 (*platezhnoe trebovanie*).

"**Платежное Требование**" означает письменное уведомление, направленное Паспортному Банку от Шах согласно Разделу 6.01 по форме, предусмотренной применимым законодательством либо, если такая форма не предусмотрена применимым законодательством, по форме Приложения 1 (*платежное требование*).

"**Payment Order**" means any request given to the Passport Bank under this Agreement by or on behalf of the Company for withdrawals, payments, conversions or transfers from, or any other dealings in respect of, any of the Russian Accounts in the form of a written instruction to be prepared in the form as provided by applicable law or, if such form is not provided by applicable law, in accordance

"**Платежное Поручение**" означает любой запрос, направленный Паспортному Банку по настоящему Договору Обществом или от имени Общества на снятие денежных средств, выплаты, конвертации или переводы с любого из Российских Счетов либо на любые иные действия в отношении любого из Российских Счетов в форме письменного указания, которое составляется по форме,

with the form agreed with the Passport Bank.

предусмотренной применимым законодательством либо, если такая форма не предусмотрена применимым законодательством, по форме, согласованной с Паспортным Банком.

"**RLI**" means RLI Partners, Limited, a limited liability company organized and existing under the laws of Gibraltar, having its registered office at Suite 23, Portland house, Glacis Road, Gibraltar.

"**RLI**" означает RLI Partners, Limited, компанию с ограниченной ответственностью, организованную и существующую в соответствии с законодательством Гибралтара, с зарегистрированным офисом по адресу: Suite 23, Portland house, Glacis Road, Gibraltar.

"**Russian Account**" means the Dollar Account.

"**Российский Счет**" означает Долларовый Счет.

"**Signature Card**" has the meaning given to that term in Section 5.01(b).

"**Карточка Образцов Подписей**" имеет значение, данное этому термину в Разделе 5.01(b).

"**Standing Payment Order**" has the meaning given to that term in Section 4.03(c).

"**Платежное Поручение о Постоянных Платежах**" имеет значение, данное этому термину в Разделе 4.03(c).

"**Term**" means the period commencing on the date of this Agreement and ending on the date when any and all claims which Shah may have against the Company under the Transaction Documents have been irrevocably paid and discharged in full.

"**Срок**" означает период, начинающийся в дату подписания настоящего Договора и заканчивающийся в дату, на которую все и всяческие требования, которые могут иметься у Шах против Общества согласно Документам о Транзакциях, будут безотзывно оплачены и погашены полностью.

**Section 1.02.    Interpretation**

**Раздел 1.02.  Толкование**

In this Agreement, unless the context otherwise requires:

В настоящем Договоре, если контекст не требует иного:

(a)    words denoting the singular include the plural and *vice versa*, words denoting persons include any person, firm, company, corporation, government, state or agency of a state or any association or partnership (whether or not having separate legal personality) of two or more of the foregoing, and references to a person include its successors and permitted assigns;

(a)    слова в единственном числе включают такие слова во множественном числе, и *наоборот*, слова, означающие лиц, включают любое физическое лицо, фирму, компанию, корпорацию, правительство, государство или государственный орган либо любое объединение или товарищество (вне зависимости от того, является ли оно самостоятельным юридическим лицом) в

составе двух или нескольких из вышеуказанных лиц, а ссылки на лицо включают ссылки на его правопреемников и разрешенных правопреемников;

(b)    a reference to a specified Section or Schedule shall be construed as a reference to that specified Section of, or Schedule to, this Agreement;

(b)    ссылка на конкретный Раздел или Приложение истолковывается как ссылка на указанный Раздел или Приложение настоящего Договора;

(c)    a reference to the parties shall be construed as a reference to the parties of this Agreement;

(c)    ссылка на стороны истолковывается как ссылка на стороны настоящего Договора;

(d)    a reference to an agreement shall be construed as a reference to such agreement as it may be amended, varied, supplemented, novated or assigned from time to time but disregarding any amendment, supplement, replacement or novation made in breach of this Agreement; and

(d)    ссылка на какой-либо договор истолковывается как ссылка на такой договор с возможными поправками, изменениями, дополнениями, новациями или периодическими уступками, но без учета каких-либо поправок, дополнений, замен или новаций, совершенных в нарушение настоящего Договора; а также

(e)    the headings are inserted for convenience of reference only and shall not affect the interpretation of this Agreement.

(e)    заголовки приводятся лишь для удобства ссылок и не сказываются на толковании настоящего Договора.

## ARTICLE II - THE RUSSIAN ACCOUNTS

## СТАТЬЯ II – РОССИЙСКИЕ СЧЕТА

### Section 2.01.    Establishment and Operation of the Russian Account

### Раздел 2.01. Открытие и ведение Российского Счета

(a)    The Company shall throughout the Term operate and maintain the Russian Account in its sole name at the Passport Bank's principal office in Moscow, the Russian Federation, or at such other place as the Company, the Passport Bank and Shah may agree in writing. Each of the Company and the Passport Bank agree and undertake to operate the Russian Account at all times during the Term in accordance with this Agreement and applicable law.'

(a)    В течение всего Срока Общество должно оперировать и поддерживать Российский Счет исключительно от своего имени в головном офисе Паспортного Банка в г. Москве, Российская Федерация, или в таком ином месте, которое может быть в письменной форме согласовано Обществом, Паспортным Банком и Шах. Общество и Паспортный Банк выражают согласие и обязуются осуществлять операции по Российскому Счету в течение всего Срока в соответствии с настоящим Договором и применимым законодательством.

(b)    Notwithstanding any restriction contained in this Agreement on the withdrawal of funds from the Russian

(b)    Вне зависимости от какого-либо ограничения, установленного настоящим Договором в отношении снятия средств с

Account, the Company shall be obliged to make any and all payments required to be made to Shah on the due date of such payment in accordance with the Transaction Documents.

**Section 2.02.    Rules    Governing    the Russian Account**

(a)    With effect from the date of this Agreement, the Bank Account Agreements shall be supplemented, amended and modified by the terms and conditions set forth in this Agreement and all terms and conditions set forth herein shall be deemed to be an integral part of the Bank Account Agreements as if stated therein.

(b)    Except as provided in this Agreement, and save as supplemented, amended or modified by this Agreement, the provisions of the Bank Account Agreements shall continue in full force and effect. In the event of any conflicts or discrepancies between the terms hereof and the terms and conditions of the Bank Account Agreements, the provisions of this Agreement shall prevail.    For the avoidance of doubt, the following provisions of the Bank Account Agreement in respect of the Dollar Account are hereby repealed and shall not apply:

(i)    Article 2.2;

(ii)    Paragraphs (a), (б), (г) and (д) of Article 3.2.3;

(iii)    Article 4.4; and

(iv)    Article 6.2.

(c)    The parties hereto agree that the Bank Account Agreements may not be modified, amended, terminated or replaced without the prior written consent of Shah, unless and to

Российского Счета, Общество обязано совершать все и всяческие платежи, причитающиеся Шах в надлежащую дату такого платежа в соответствии с Документами о Транзакциях.

**Раздел 2.02. Правила,    регулирующие Российский Счет**

(a)    С даты подписания настоящего Договора в Договоры Банковских Счетов вносятся дополнения, поправки и изменения в соответствии с условиями и положениями, изложенными в настоящем Договоре, и все условия и положения, изложенные в настоящем Договоре, считаются неотъемлемой частью Договоров Банковского Счета, как если бы они были в них изложены.

(b)    За исключением того, что предусмотрено в настоящем Договоре и дополнено, изменено или модифицировано в силу настоящего Договора, положения Договоров Банковского Счета продолжают оставаться полностью в силе. В случае любых противоречий или расхождений между условиями настоящего Договора и условиями и положениями Договоров Банковского Счета определяющую силу имеют положения настоящего Договора. Во избежание сомнений, следующие положения Договора Банковского Счета в отношении Долларового Счета теряют силу и не подлежат применению:

(i)    Статья 2.2;

(ii)    Параграфы (a), (б), (г) и (д) Статьи 3.2.3;

(iii)    Статья 4.4; и

(iv)    Статья 6.2.

(c)    Стороны настоящего Договора выражают согласие с тем, что в Договоры Банковского Счета не могут вноситься изменения, поправки, и их действие не

the extent the Passport Bank is mandatorily obliged by applicable law to modify the terms of the Bank Account Agreements unilaterally.

может быть прекращено, а также они не могут быть заменены без предварительного письменного согласия Шах, если только и в той степени, в которой Паспортный Банк не обязан в силу применимого законодательства изменять условия Договоров Банковского Счета в одностороннем порядке.

### Section 2.03.    Interest

Amounts held in the Dollar Account shall earn interest at such rate(s) as may be applied by the Passport Bank from time to time pursuant to separate agreement(s) entered into by the Passport Bank and the Company which agreement(s) shall constitute an integral part of the Bank Account Agreements. All interest earned on amounts held in the Dollar Account shall be credited to the Dollar Account.

### Раздел 2.03. Проценты

На суммы, находящиеся на Долларовом Счете, проценты начисляются по таким ставкам, которые периодически могут применяться Паспортным Банком в соответствии с отдельным(и) договором(договорами), заключенным(и) между Паспортным Банком и Обществом, каковой(-ые) договор(ы) представляет(ют) собой неотъемлемую часть Договоров Банковского Счета. Все проценты, начисленные на суммы, находящиеся на Долларовом Счете, начисляются на Долларовый Счет.

### ARTICLE III - INTENTIONALLY DELETED

### ARTICLE IV - WITHDRAWALS FROM THE RUSSIAN ACCOUNT

### СТАТЬЯ III – НАМЕРЕННО УДАЛЕНА

### СТАТЬЯ IV – СНЯТИЯ СРЕДСТВ С РОССИЙСКОГО СЧЕТА

### Section 4.01.    Permitted Withdrawals

(a)    The minimum balance standing to the credit of the Dollar Account shall at all times be not less than three million US Dollars ($3,000,000) (the "**Minimum Balance**"), except that the Minimum Balance requirement shall not apply if withdrawals from the Dollar Account are made pursuant to the Standing Payment Order as provided in Section 4.03 (c) or by Shah as permitted by Section 6.01 (a). For the avoidance of doubt, any and all funds standing to the credit of the Dollar Account may be withdrawn pursuant to the Standing Payment Order as provided in Section 4.03 (c) or by Shah as permitted by Section 6.01 (a).

### Раздел 4.01. Разрешенные снятия средств

(a)    Минимальный баланс остатка средств на Долларовом Счете при любых обстоятельствах должен составлять не менее 3 000 000 (Трех миллионов) долларов США ("**Минимальный Баланс**"), за исключением случаев, когда требование о Минимальном Балансе не применяется, если снятие средств с Долларового Счета осуществляется на основании Платежного Поручения о Постоянных Платежах в соответствии с Разделом 4.03 (c) или снятие средств с Долларового Счета осуществляется Шах в соответствии с Разделом 6.01 (a). Во избежание сомнений, любые и все средства, находящиеся на Долларовом Счете могут быть сняты на основании Платежного Поручения о Постоянных

(b)    Without the prior written consent of Shah the Company shall not withdraw any moneys from the Dollar Account or otherwise dispose thereof during the Term, except for transfers of funds to the accounts opened in the name of Shah.

### Section 4.02.    Prohibited Transactions

The Company shall not at any time during the Term, without the prior written consent of Shah:

(a)    close the Russian Account;

(b)    withdraw or transfer any amount standing to the credit of the Russian Account to another account held in its own name or to the account of any other person otherwise than as permitted by Section 4.01;

(c)    withdraw, amend or replace the Signature Card or the Standing Payment Order;

(d)    amend or close the transaction passport opened with the Passport Bank in respect of the Existing Loan Agreement or transfer it to any other bank;

(e)    create or permit to exist any encumbrance in relation to, or otherwise encumber, the Russian Account, moneys at any time standing to the credit thereof, or the Company's rights under the Bank Account Agreement or this Agreement; or

(f)    do any act, or omit to do any act, if that act or omission would adversely affect the rights of Shah under this Agreement.

---

Платежах в соответствии с Разделом 4.03 (с) или сняты Шах в соответствии с Разделом 6.01 (а).

(b)    Общество не вправе снимать средства с Долларового Счета или иным образом распоряжаться ими в течение Срока без предварительного письменного согласия Шах, за исключением случаев, когда переводы средств происходят на счета, открытые на имя Шах.

### Раздел 4.02.    Запрещенные сделки

В течение всего Срока, без предварительного письменного согласия Шах, Общество не должно:

(a)    закрывать Российский Счет;

(b)    снимать или переводить любую сумму, находящуюся на Российском Счете, на другой счет, открытый на имя Общества, или на счет любого иного лица за исключением случаев, предусмотренных Разделом 4.01;

(c)    отзывать, изменять или заменять Карточку Образцов Подписей или Платежное Поручение о Постоянных Платежах;

(с)    изменять или закрывать паспорт сделки, открытый в Паспортном Банке в отношении Существующего Договора Займа, или переводить его в любой другой банк;

(d)    создавать или допускать существование какого-либо обременения или создавать иное обременение в отношении Российского Счета, средств, находящихся на нем на любой момент, или прав Общества по Договору Банковского Счета или настоящему Договору; или

(e)    совершать никаких действий и не допускать никакого бездействия, если такое действие или бездействие может неблагоприятно сказаться на правах Шах

по настоящему Договору.

**Section 4.03.    Withdrawals Procedure**

(a)    All requests to be given to the Passport Bank under this Agreement by the Company for withdrawals, payments, conversions or transfers from, or any other dealings in respect of, the Russian Account, shall be in the form of the Payment Order.

(b)    Subject to Russian law requirements for the order of priority relating to the withdrawal of funds from a bank account, the Company hereby instructs the Passport Bank to execute Payment Orders and Payment Demands submitted the same day in the following order: (i) first, Payment Demands submitted by Shah pursuant to Section 6.01 (ii) second, the Standing Payment Order ; and (iii) third, other Payment Orders submitted by the Company. The Company shall not instruct the Passport Bank to execute Payment Orders or Payments Demands in an order of priority different from the one described in this Section 4.03(b) without the prior written consent of Shah.

(c)    On the date of the signing of this Agreement, the Company shall submit to the Passport Bank an undated Payment Order instructing the Passport Bank to withdraw from the Dollar Account in favor of Shah the funds in the amount of three million US Dollars ($3,000,000) (the **"Standing Payment Order"**). The Standing Payment Order shall be made in the form attached hereto as Schedule 3 and shall be properly executed by the Company.

(d)    On the date of the signing of this

**Раздел 4.03.  Порядок снятия средств**

(a)    Все запросы, подлежащие подаче в Паспортный Банк по настоящему Договору со стороны Общества в отношении снятия средств, выплат, конвертаций или переводов с, или любых иных операций в отношении Российского Счета, составляются в форме Платежного Поручения.

(b)    С учетом требований законодательства Российской Федерации к очередности списания денежных средств с банковского счета Общество настоящим дает указания Паспортному Банку исполнять Платежные Поручения и Платежные Требования, поданные в один и тот же день, в следующем порядке: (i) в первую очередь, Платежные Требования, поданные Шах согласно Разделу 6.01; (ii) во вторую очередь, Резервные Платежные Поручение, и (iii) в третью очередь, иные Платежные Поручения, поданные Обществом. Общество обязуется не давать Паспортному Банку инструкций об исполнении Платежных Требований или Платежных Поручений в нарушение порядка приоритетности их исполнения, предусмотренного настоящим Разделом 4.03(b), без предварительного письменного согласия на то Шах.

(c)    В дату подписания настоящего Договора Общество должно передать Паспортному Банку Платежное Поручение без проставленной даты, поручающее Паспортному Банку снять с Долларового Счета в пользу Шах средства в размере трех миллионов (3 000 000) долларов США (**"Платежное Поручение о Постоянных Платежах"**). Платежное Поручение о Постоянных Платежах должно быть составлено по форме, прилагаемой к настоящему Договору в качестве Приложения 3, и должно быть должным образом исполнено Обществом.

(d)    В дату подписания настоящего

Agreement, the Company shall also submit to the Passport Bank a duly executed but undated currency operation certificate in respect of a transfer of funds envisaged by the Standing Payment Order in the form required by law (the **"Currency Certificate for Standing Payment Order"**).

(e)    The Passport Bank shall hold the Standing Payment Order and the Currency Certificate for Standing Payment Order in escrow and shall date both documents and perform the Standing Payment Order by transferring three million US Dollars ($3,000,000) standing to the credit of the Dollar Account to the account of Shah immediately (no later than on the same Moscow Business Day) upon the occurrence of any of the following events:

(i)    the Company attempts to amend in any way any provision of, or terminate the Bank Account Agreements, or close any of the Russian Accounts;

(ii)    the Company attempts to withdraw, modify, terminate or replace any of the Standing Payment Order, the Currency Certificate for Standing Payment Order, the Currency Certificate for Payment Demand or the Signature Card;

(iii)    the Company attempts to withdraw or transfer any amount standing to the credit of the Dollar Account to another account held in its own name or to the

---

Договора Общество также должно передать Паспортному Банку должным образом исполненную, но без проставленной даты, справку о валютных операциях в отношении перевода средств, предусмотренного Платежным Поручением о Постоянных Платежах в форме, предусмотренной законодательством ("Справка о Валютных Операциях для Платежного Поручения о Постоянных Платежах").

(e)    Паспортный Банк обязуется держать Платежное Поручение о Постоянных Платежах и Справку о Валютных Операциях для Платежного Поручения о Постоянных Платежах у себя на хранении, и вписать даты в оба документа и немедленно (не позднее чем в тот же Московский Рабочий День) исполнить Платежное Поручение о Постоянных Платежах путем перевода трех миллионов (3 000 000) долларов США с Долларового Счета на счет Шах в случае наступления любого из следующих событий:

(i)    Общество пытается каким-либо образом изменить любое из положений Договоров Банковского Счета, или прекратить их действие, либо закрыть любые из Российских Счетов;

(ii)    Общество пытается отозвать, изменить, заменить или прекратить действие Платежного Поручения о Постоянных Платежах, Справки о Валютных Операциях для Платежного Поручения о Постоянных Платежах, Справки о Валютных Операциях для Платежного Требования или Карточки Образцов Подписей;

(iii)    Общество пытается снять или перевести любую сумму, находящуюся на Долларовом Счете, на другой счет, открытый на его имя или на счет любого

account of any other person;

другого лица;

(iv) the Company attempts to close or transfer the transaction passport opened in respect of the Existing Loan Agreement with the Passport Bank to any other bank;

(iv) Общество пытается закрыть или перевести паспорт сделки, открытый в отношении Существующего Договора Займа в Паспортном Банке, в любой другой банк;

(v) any person other than the Company (including state authorities) submits to the Passport Bank a request for a withdrawal, or becomes entitled to withdraw, any moneys standing to the credit of the Dollar Account pursuant to any debt authority, payments instruction, withdrawal agreement, enforcement order, court judgment, arbitration award or otherwise; or

(v) любое лицо, отличное от Общества (включая государственные органы), представляет в Паспортный Банк запрос на списание, либо же приобретает право на списание любых средств, находящихся на Долларовом Счете, согласно любому решению о взыскании задолженности, платежному поручению, договору о снятии средств, приказу о принудительном осуществлении в судебном порядке, решению суда, арбитражному решению или на ином основании; или

(vi) the Company submits to the Passport Bank any other instructions, letters or Payment Orders not mentioned in items (i) – (iv) above in violation of any terms of this Agreement.

(vi) Общество направляет Паспортному Банку любые другие инструкции, письма или Платежные Поручения, не предусмотренные выше в подпунктах (i) – (iv) в нарушение условий настоящего Договора.

(f) Should the moneys standing to the credit of the Dollar Account be insufficient to comply with the Standing Payment Order to make a payment in full, the Passport Bank shall continue to utilize moneys transferred to the Dollar Account at a later date to comply with the Standing Payment Order until the time it has been satisfied in full.

(f) Если денежных средств, зачисленных на Долларовый Счет, недостаточно для выполнения Платежного Поручения о Постоянных Платежах полностью, Паспортный Банк обязуется продолжать использовать денежные средства, переведенные на Долларовый Счет в более поздние даты, для выполнения соответствующего Платежного Поручения о Постоянных Платежах до тех пор, пока оно не будет выполнено полностью.

(g) The Company hereby authorizes the Passport Bank to do all actions and to execute all documents and instructions (including, but not limited to, currency operation certificates) which may be required under Russian law for

(g) Настоящим Общество уполномочивает Паспортный Банк выполнять любые действия и оформлять любые документы и инструкции (включая, помимо прочего, справки о

the Passport Bank to perform the Standing Payment Order as described in this Section 4.03 and, on the date of the signing of this Agreement, shall submit to the Passport Bank a letter in the form set out in Schedule 4.

валютных операциях), которые могут потребоваться по законодательству Российской Федерации для того, чтобы Паспортный Банк смог исполнить Платежное Поручение о Постоянных Платежах в соответствии с Разделом 4.03, и, в день подписания настоящего Договора Общество должно передать Паспортному Банку письмо по форме, приведенной в Приложении 4.

## ARTICLE V - SIGNATURE CARD

## СТАТЬЯ V – КАРТОЧКА ОБРАЗЦОВ ПОДПИСЕЙ

**Section 5.01.    Preparation    and Operation of the Signature Card**

**Раздел 5.01. Оформление и действие Карточки Образцов Подписей**

(a)    The Russian Accounts shall be operated in accordance with the Signature Card on the terms and conditions as defined in this Section 5.01, which Signature Card shall be prepared in compliance with the requirements of applicable legislation and the requirements of the Passport Bank.

(a)    Работа с Российскими Счетами должна производиться по Карточке Образцов Подписей на условиях и положениях, указанных в настоящем Разделе 5.01. Карточка Образцов Подписей должна быть подготовлена в соответствии с требованиями законодательства и Паспортного Банка.

(b)    The Company shall within one (1) calendar day from the date of this Agreement prepare and submit to the Passport Bank a signature card (the **"Signature Card"**) certified by an authorized representative of the Passport Bank and containing the name and the signature of Shah who is authorized to operate the Russian Account and has the sole right of the first signature in respect of any Payment Orders or other instructions to be submitted in respect of the Russian Account pursuant to a power of attorney issued by the Company to Shah on the date of the signing of this Agreement in the form set out in Schedule 2.

(b)    В течение одного (1) календарного дня с даты подписания настоящего Договора Общество оформит и передаст в Паспортный Банк карточку образцов подписей (**"Карточка Образцов Подписей"**), заверенную уполномоченным представителем Паспортного Банка, с указанием имени и подписи представителя Шах, который будет уполномочен на оперирование Российским Счетом и будет являться единственным обладателем права первой подписи в отношении любых Платежных Поручений или иных инструкций, передаваемых в отношении Российского Счета в соответствии с доверенностью, выданной Обществом компании Шах в дату подписания настоящего Договора по форме, приведенной в Приложении 2.

ARTICLE VI - RIGHTS, POWERS AND DUTIES OF SHAH

СТАТЬЯ VI – ПРАВА, ПОЛНОМОЧИЯ И ОБЯЗАННОСТИ ШАХ

**Section 6.01.   Shah's Rights in Respect of the Dollar Account**

**Раздел 6.01. Права Шах в отношении Долларового Счета**

(a)     In accordance with Articles 847(2) and 854 of the Civil Code of the Russian Federation the Company hereby instructs the Passport Bank to make withdrawals, payments and transfers from the Dollar Account, on written demand of Shah in the form as provided by applicable law or, if such form is not provided by applicable law, (each such demand, a **"Payment Demand"**) without any further consent, instruction or payment demand from the Company.

(a)     В соответствии со Статьями 847(2) и 854 Гражданского Кодекса Российской Федерации Общество настоящим дает указание Паспортному Банку совершать снятия средств, выплаты и переводы с Долларового Счета по письменному требованию Шах по форме, предусмотренной применимым законодательством, либо, если такая форма не предусмотрена применимым законодательством, (каждое такое требование именуется **"Платежным Требованием"**), без какого-либо дальнейшего согласия, указания или платежного требования со стороны Общества.

(b)     Shah may submit as many Payment Demands as she considers appropriate if the Company fails to comply with its payment obligations to Shah under any Transaction Documents. The Passport Bank hereby undertakes to comply with any and all Payment Demands submitted by Shah.

(b)     Шах может подавать такое количество Платежных Требований, которое сочтет уместным, если Общество не соблюдает свои платежные обязательства перед Шах по любым Документам о Транзакциях. Паспортный Банк настоящим обязуется исполнять все и всяческие Платежные Требования, направляемые ему компанией Шах.

(c)     On the date of the signing of this Agreement, the Company shall submit to Shah

(c)     В дату подписания настоящего Договора Общество должно передать компании Шах

(d)     a duly executed but undated currency operation certificate in respect of a transfer of funds to be made under a Payment Demand in the form required by law (the **"Currency Certificate for Payment Demand"**).

(d)     должным образом оформленную без проставленной даты справку о валютных операциях в отношении перевода средств, который должен быть осуществлен по Платежному Требованию в форме, предусмотренной законодательством (**"Справка о Валютных Операциях для Платежного Требования"**).

(e)     The Company hereby authorizes the Passport Bank to do all actions and to execute all documents and instructions (including, but not limited to, currency operation certificates)

(d)     Общество настоящим уполномочивает Паспортный Банк совершать все действия и подписывать все документы и инструкции (включая,

which may be required under applicable law in order to enable Shah to exercise his rights to make withdrawals, payments, conversions and transfers from the Dollar Account.

среди прочего, справки о валютных операциях), которые могут требоваться согласно применимому законодательству, для того, чтобы Шах мог осуществлять свои права на снятие средств, выплаты, конвертации и переводы с Долларового Счета.

(f)    The Company shall, on the date of this Agreement and promptly upon any and each request of Shah or the Passport Bank, provide the Passport Bank with all necessary information and documents in form and substance satisfactory to the Passport Bank to enable Shah to exercise its rights to make withdrawals, payments and transfers from the Russian Accounts.

(е)    В день подписания настоящего Договора и безотлагательно по подаче любого и каждого запроса со стороны Шах или Паспортного Банка, Общество должно предоставить Паспортному Банку все необходимые сведения и документы, удовлетворяющие Паспортный Банк по форме и содержанию, с тем, чтобы Шах мог осуществлять свои права на совершение снятий средств, выплат и переводов с Российских Счетов.

### Section 6.02.    Power of Attorney

(a)    The Company hereby appoints Shah as its representative and grants to it full authority and rights to do all acts and things and sign all documents which the Company would otherwise be entitled to do or sign in relation to the Russian Accounts, the money at any time deposited in the Russian Account or the Company's rights under the Bank Account Agreements or in connection with any of the other matters provided for in this Agreement, and to receive from all government bodies, including tax authorities of the Russian Federation, the Central Bank of the Russian Federation and any other person, information regarding the Russian Accounts.

### Раздел 6.02.  Доверенность

(a)    Общество настоящим назначает Шах своим представителем и предоставляет ему все права и полномочия совершать все действия и подписывать все документы, которые в ином случае Общество имело бы право совершать или подписывать в отношении Российских Счетов, денежных средств, в любое время зачисленных на Российский Счет, либо прав Общества по Договорам Банковского Счета, либо в связи с любыми другими вопросами, предусмотренными настоящим Договором, а также получать во всех государственных органах, включая налоговые органы Российской Федерации, Центральный Банк Российской Федерации и любое иное лицо, сведения о Российских Счетах.

(b)    Shah may delegate to others all or part of the authority and rights granted to him by the Company to the extent permitted by applicable law. Any such delegation shall be promptly notified to the Company and the Passport Bank.

(b)    Шах может передоверять другим лицам все или некоторые из полномочий и прав, предоставленных ему Обществом, в той степени, в которой это разрешено применимым законодательством. О любом таком передоверии безотлагательно сообщается Обществу и Паспортному Банку.

(c)    The Company shall, on the date of this

(c)    Общество должно, в дату

Agreement and promptly upon any and each request of Shah, grant to Shah a power of attorney in the form set out in Schedule 1 to exercise the above rights. The Company agrees that it shall, whenever reasonably requested by Shah, issue to Shah a replacement power of attorney in form and substance satisfactory to Shah. The Company shall, at its own expense, do or permit to be done every act or thing and sign and deliver every document or instrument that Shah or the Passport Bank may from time to time require in order to give effect to any power of attorney or a replacement power of attorney granted pursuant to this Section 5.02.

подписания настоящего Договора и незамедлительно по любому и всяческому запросу Шах, предоставить Шах доверенность по форме, содержащейся в Приложении 1, для осуществления вышеуказанных прав. Общество выражает согласие с тем, что по любому обоснованному запросу Шах Общество выдаст Шах заменяющую доверенность, по форме и содержанию удовлетворительную для Шах. Общество за свой собственный счет должно совершить или допустить совершение каждого акта или действия, и подписать и вручить каждый документ или инструмент, который Шах или Паспортный Банк могут периодически затребовать для придания действительности любой доверенности или заменяющей доверенности, предоставленной в соответствии с настоящим Разделом 5.02.

## ARTICLE VII - ACCESS TO RUSSIAN ACCOUNT RECORDS

## СТАТЬЯ VII – ДОСТУП К ОТЧЕТНОСТИ ПО РОССИЙСКОМУ СЧЕТУ

### Section 7.01.    Documents Relating to the Russian Accounts

### Раздел 7.01. Документы, относящиеся к Российским Счетам

(a)    The Company shall promptly provide Shah with copies of all agreements, documents and instruments evidencing the opening of the Russian Account in form and substance satisfactory to Shah.

(a)    Общество должно незамедлительно предоставлять Шах копии всех договоров, документов и инструментов, подтверждающих открытие Российского Счета, по форме и содержанию удовлетворяющие Шах.

(b)    The Company hereby authorizes the Passport Bank, in accordance with Article 857 of the Civil Code of the Russian Federation, to provide and disclose to Shah all information with respect to the Russian Account contemplated in this Agreement or the Existing Loan Agreement. The Company undertakes to promptly take all such steps as necessary to give effect to the above authorizations, including the issuance of the power of attorney to Shah as provided in Section 5.02.

(b)    Общество настоящим уполномочивает Паспортный Банк, в соответствии со Статьей 857 Гражданского кодекса . Российской Федерации предоставлять и раскрывать Шах всю информацию в отношении Российского Счета, предусмотренную в настоящем Договоре или в Существующем Договоре Займа. Общество обязуется безотлагательно совершать все те действия, которые необходимы для придания действительности вышеуказанным полномочиям, включая выдачу доверенности Шах, как предусмотрено в

Разделе 5.02.

(c)    The Company and the Passport Bank shall, at the Company's cost and expense, provide Shah with such other information relating to the Russian Account or any transactions effected or to be effected in respect of the Russian Accounts as Shah may from time to time request.

(d)    The Passport Bank shall provide such information regarding the Russian Accounts to any Authority as any such Authority may from time to time request (within the scope of the competence of such Authority) and shall promptly advise the Company and Shah in writing when any such information is so requested or provided.

(e)    The Passport Bank and the Company shall permit representatives of Shah (including, without limitation, any consultants engaged by Shah) to have access to their records where Shah has requested such access in writing no less than one (1) Business Day in advance. If an event of default under the Bridge Loan has occurred, then access to the records of the Passport Bank and the Company may take place without notice and at any time which Shah considers appropriate in the circumstances.

## ARTICLE VIII - RIGHTS, POWERS AND DUTIES OF THE PASSPORT BANK

### Section 8.01.    Compliance    by    the Passport Bank with Payment Orders and Payment Demands

(a)    The Passport Bank shall at all times act only in accordance with this Agreement, any Payment Order or Payment Demand conforming to the requirements of this Agreement, the Bank Account Agreements and applicable law and shall promptly follow all and any Payment Orders and Payment

(c)    Общество и Паспортный Банк предоставляют Шах за счет Общества такую иную информацию, относящуюся к Российскому Счету или любым операциям, совершенным или подлежащим совершению в отношении Российских Счетов, которую Шах может периодически затребовать.

(d)    Паспортный Банк предоставляет ту информацию в отношении Российских Счетов любому Органу, которую такой Орган может периодически запрашивать (в пределах сферы компетенции такого Органа), и безотлагательно письменно извещает Общество и Шах о фактах запросов или предоставления такой информации.

(e)    Паспортный Банк и Общество предоставляют представителям Шах (включая, кроме прочего, любых консультантов, нанятых Шах) доступ к своим документам в случае, когда Шах письменно обратился за предоставлением такого доступа заранее, не менее чем за один (1) Рабочий День. В случае наступления события неисполнения по Промежуточному Займу, доступ к документам Паспортного Банка и Общества может быть осуществлен без уведомления и в любое время, которое Шах сочтет уместным в данных обстоятельствах.

## СТАТЬЯ VIII – ПРАВА, ПОЛНОМОЧИЯ И ОБЯЗАННОСТИ ПАСПОРТНОГО БАНКА

### Раздел 8.01. Исполнение Паспортным Банком Платежных Поручений и Платежных Требований

(a)    Паспортный Банк неизменно действует исключительно в соответствии с настоящим Договором, любым Платежным Поручением или Платежным Требованием, согласующимися с требованиями настоящего Договора, Договоров Банковского Счета и

Demands properly given and at all times credit the Russian Account, make deposits into and payments, conversions and transfers from the Russian Account only as required by this Agreement, the Bank Account Agreements, the Standing Payment Order or Payment Demand and applicable law. The Passport Bank shall not perform (unless required by applicable law) any request from the Company that is not made or issued in conformity with the requirements of this Agreement and shall immediately inform Shah and the Company, respectively, of any such non-conforming request.

применимого законодательства, и безотлагательно исполняет все и всяческие Платежные Поручения и Платежные Требования, изданные должным образом, и неизменно зачисляет средства на Российский Счет, помещает депозиты и совершает платежи, конвертацию и переводы с Российского Счета только в соответствии с требованиями настоящего Договора, Договоров Банковского Счета, Платежного Поручения о Постоянных Платежах или Платежного Требования и применимого законодательства. Паспортный Банк не выполняет (если только того не требует применимое законодательство) какое-либо поручение со стороны Общества, которое не выдано или не издано в соответствии с требованиями настоящего Договора, и безотлагательно извещает Шах и Общество соответственно о любом таком поручении, не согласующемся с требованиями.

(b)     In the event that the Passport Bank is unsure as to the application of any provision of this Agreement, the performance under any Payment Order or Payment Demand or as to any action to be taken by it under this Agreement (including without limitation any action to be taken after an event of default under the Bridge Loan has occurred and is continuing), it may request and rely upon (and the Company hereby expressly confirms that the Passport Bank may request and rely upon) written clarification of Shah.

(b)     В том случае, если у Паспортного Банка появляются сомнения в отношении применения любого положения настоящего Договора, совершения действий по любому Платежному Поручению или Платежному Требованию, или в отношении любого действия, которое ему надлежит совершить по настоящему Договору (включая, кроме прочего, любое действие, подлежащее совершению после наступления и во время продолжения события неисполнения по Промежуточному Займу), он вправе запросить и полагаться (а Общество настоящим прямо подтверждает, что Паспортный Банк вправе запросить и полагаться) на письменное разъяснение Шах.

(c)     In the event the Passport Bank is unable to effect any operation or transaction required under this Agreement or any Payment Order or Payment Demand or to refuse performance of any non-conforming request due to a mandatory requirement of

(c)     В том случае, если Паспортный Банк не способен осуществить какую-либо операцию или сделку, которую надлежит осуществить по настоящему Договору или любому Платежному Поручению или Платежному

applicable law, it shall as promptly as possible but in any event no later than on the Moscow Business Day following the date of the occurrence of the relevant event, notify in writing Shah and the Company of such event.

(d)    Except as expressly permitted by this Agreement or as may be required by applicable law, the Passport Bank agrees that it shall not, without the prior written consent of Shah (and if the Passport Bank is required to do so by any mandatory requirement of applicable law, it shall immediately notify Shah and the Company):

(i)    encumber, transfer or release all or any part of the funds credited to the Russian Account maintained by it in any manner not in accordance with this Agreement or any Payment Order or Payment Demand issued during the Term;

(ii)    recognize any interest of any person in or in respect of the Russian Account other than arising out of operation of any mandatory requirement of applicable law and pursuant to the terms of this Agreement; or

(iii)    take any other action or otherwise deal with all or any part of the Russian

Требованию, или если он не может отказаться от выполнения какого-либо не отвечающего требованиям поручения в силу обязательного для исполнения требования применимого законодательства, он, в кратчайшие возможные сроки, но в любом случае не позднее Московского Рабочего Дня, следующего за днем наступления соответствующего события, письменно уведомляет Шах и Общество о таком событии.

(d)    Паспортный Банк выражает согласие с тем, что, за исключением случаев когда настоящим Договором прямо разрешается иное, или когда иное может потребоваться в соответствии с применимым законодательством, он не будет без предварительного письменного согласия Шах (а если от Паспортного Банка потребуется сделать это согласно любому обязательному для исполнения требованию применимого законодательства, он незамедлительно предоставит соответствующее уведомление Шах и Обществу):

(i)    обременять, передавать или выдавать все или любую часть денежных средств, зачисленных на Российский Счет, поддерживаемый им, любым образом, не соответствующим настоящему Договору или любому Платежному Поручению или Платежному Требованию, выданному в течение Срока.

(ii)    признавать любое право собственности любого лица на, или в отношении Российского Счета, кроме права собственности, возникшего в силу действия обязательного для исполнения требования применимого законодательства и согласно условиям настоящего Договора; либо

(iii)    предпринимать любые другие действия или осуществлять иные

Account.

операции по всему Российскому Счету или по любой его части.

**Section 8.02.    Notification of Shah by the Passport Bank**

The Passport Bank shall, at the Company's cost and expense, no later than on the Moscow Business Day following the date when the Passport Bank became aware of any of the following, notify Shah if:

(i)    the Company attempts to amend in any way any provision of, or terminate the Bank Account Agreements, or close the Russian Account;

(ii)    any person other than the Company requests to withdraw, or becomes entitled to withdraw, moneys standing to the credit of any of the Russian Account pursuant to any debt authority, payments instruction, withdrawal agreement, enforcement order, court judgment, arbitration award or otherwise;

(iii)    an injunction, suspension order or similar arrangement is imposed on the Russian Account, which leads to the restrictions of any nature on the withdrawal or transfer of all or any moneys from or into the Russian Account, including as a result of the application of any normative acts or court practice which adversely affect (or may adversely affect) any rights of Shah under this Agreement;

**Раздел 8.02.    Уведомление    Шах Паспортным Банком**

Паспортный Банк предоставит соответствующее уведомление Шах, (с отнесением соответствующих расходов на счет Общества), не позднее следующего Московского Рабочего Дня, следующего за днем, когда Паспортному Банку станет известно о наступлении любого из следующих обстоятельств:

(i)    Общество попытается изменить каким-либо образом любое положение Договоров Банковского Счета или расторгнуть Договоры Банковского Счета, либо закрыть Российский Счет;

(ii)    любое лицо, кроме Общества, попытается снять или получит право на снятие денежных средств, находящихся на Российском Счете, согласно любому решению о взыскании задолженности, платежному поручению, договору о снятии средств, приказу о принудительном осуществлении в судебном порядке, решению суда, арбитражному решению или на ином основании;

(iii)    в отношении Российского Счета будет наложен судебный запрет, выдано предписание о приостановке операций, или приняты аналогичные меры, что приведет к возникновению ограничений любого характера по снятию с Российского Счета или перечислению на Российский Счет всех или любой части денежных средств, в том числе в результате применения любых нормативных актов или судебных процедур, оказывающих негативное воздействие (или способных оказать негативное воздействие)

(iv)  the Company grants (or purports to grant) an Encumbrance over the Russian Account, moneys standing to the credit of the Russian Account, or rights relating thereto, in favor of any person; or

(v)  any court or enforcement proceedings (or any other proceedings or bringing a suit or claim which may lead to a court proceeding) are initiated with respect to any of the Russian Account,

except, in each case, in accordance with this Agreement.

### Section 8.03.    Waiver of Rights of Set-Off and Other Rights

The Passport Bank agrees that it shall not have, and undertakes not to claim or exercise, any Encumbrance, right of set-off, combination of the account or other right, remedy or security against or with respect to the Russian Account (whether arising by law or otherwise).

### Section 8.04.    Compensation and Fees

(a)  The Company shall pay to the Passport Bank such transaction charges, currency exchange fees and other fees and charges in accordance with the tariffs established by the Passport Bank.

(b)  The Passport Bank agrees that it shall have no right against Shah for any fees and charges in respect of any of the Russian

на любые права Шах по настоящему Договору;

(iv)  Общество предоставит (или будет намереваться предоставить) Обременение в отношении Российского Счета, денежных средств, находящихся на Российском Счете, или относящихся к нему прав, в пользу любого лица; или

(v)  в отношении любого из Российских Счетов будет начато судебное разбирательство или исполнительное производство (или будет начато любое другое разбирательство, или подан иск или претензия, которые могут привести к судебному разбирательству),

кроме как, в каждом случае, в соответствии с настоящим Договором.

### Раздел 8.03.  Отказ от прав на зачет и иных прав

Паспортный Банк выражает согласие с тем, что он не будет использовать и обязуется не требовать использования и не использовать любое Обременение, право зачета, сочетание счетов или иное право, средство правовой защиты или обеспечение по, или в отношении Российского Счета (возникающее как по закону, так и иным образом).

### Раздел 8.04.  Компенсация и оплата услуг

(a)  Общество выплачивает Паспортному Банку комиссии за проведение операций, конвертаций или любые иные комиссии в соответствии с тарифами, установленными Паспортным Банком.

(b)  Паспортный Банк выражает согласие с тем, что у него не будет каких-либо прав в отношении Шах на любую плату за услуги и комиссии, относящиеся

Account.

(c)    The Passport Bank may withdraw its charges from any accounts other than the Russian Account opened and maintained by the Company with the Passport Bank.

## ARTICLE IX - LIMITATION OF LIABILITY

**Section 9.01.    Limitation of Liability**

(a)    To the extent permitted by applicable law, the parties acknowledge and agree that:

(i)    each of Shah and the Passport Bank will not in any way be liable or responsible to the Company for any loss or liability arising from the exercise or purported exercise of any of its rights, powers or discretions under this Agreement; and

(ii)    neither Shah nor the Passport Bank shall incur any liability in connection with any power of attorney granted pursuant to this Agreement or the rights transferred to Shah pursuant to this Agreement.

(b)    The Company hereby ratifies and confirms (and agrees that it will ratify and confirm, whenever reasonably requested by Shah) whatever Shah, persons appointed by Shah or any other person to which Shah properly delegates its authority does or purports to do under any power of attorney issued by the Company hereunder.

---

к любому из Российских Счетов.

(c)    Паспортный Банк вправе списывать причитающиеся ему комиссии с любых счетов Общества, открытых в Паспортном Банке, за исключением Российского Счета.

## СТАТЬЯ IX – ОГРАНИЧЕНИЕ ОТВЕТСТВЕННОСТИ

**Раздел 9.01.  Ограничение ответственности**

(a)    В той мере, в которой это разрешается применимым законодательством, стороны подтверждают и выражают согласие с тем, что:

(i)    как Шах, так и Паспортный Банк не будут каким-либо образом ответственны или нести обязательства перед Обществом за любой убыток или обязательство, возникшее в результате осуществления или намерения осуществить любое из его прав, полномочий или дискреционных прав на настоящему Договору; и

(ii)    ни у Шах, ни у Паспортного Банка не возникнет каких-либо обязательств в связи с любой доверенностью, предоставленной согласно настоящему Договору, или правами, переданными Шах согласно настоящему Договору.

(b)    Общество настоящим одобряет и утверждает (и обязуется одобрять и утверждать всякий раз при получении обоснованного запроса от Шах) любые действия, которые Шах, лица, назначенные Шах, или любое иное лицо, которому Шах надлежащим образом делегирует свои полномочия, предпринимают или намереваются предпринять на основании доверенности, выдаваемой Обществом в соответствии с настоящим Договором.

## ARTICLE X - MISCELLANEOUS PROVISIONS

### Section 10.01.    Amendment and Waivers

Any amendment of any provision of this Agreement shall be in writing and signed by the parties.    To the extent permitted by applicable law of the Russian Federation, no failure or delay in exercising any power, remedy, discretion, authority or other rights under this Agreement and no course of dealing between Shah and the Company and/or the Passport Bank shall waive or impair that or any other right of Shah. No partial exercise of any right, power or privilege hereunder shall preclude any other or further exercise thereof and no exercise of any right, power or remedy shall preclude the exercise of any other right, power or remedy. All waivers or consents given under this Agreement shall be in writing and signed by each party granting the waiver.

### Section 10.02.    Release

This Agreement shall automatically terminate upon expiry of the Term. Upon the termination of this Agreement, Shah shall, at the request and expense of the Company, release to the Company all the rights of Shah in respect to the Russian Account and give such instructions and directions as may be required in order to perfect such release. Shah shall also return to the Company (i) all powers of attorney issued to Shah or any of its representative in relation to any Russian Accounts, and (ii) at the request and expense

## СТАТЬЯ X – ПРОЧИЕ ПОЛОЖЕНИЯ

### Раздел 10.01. Внесение    изменений    и отказ от прав

Любое изменение к любому положению настоящего Договора оформляется в письменном виде и подписывается сторонами. В пределах, разрешенных применимым законодательством Российской Федерации, никакое неиспользование или задержка в использовании любого полномочия, средства правовой защиты, дискреционного права, правомочия или иных прав по настоящему Договору и никакая практика деловых отношений между Шах и Обществом и/или Паспортным Банком не будут являться отказом от любого данного или иного права Шах, или наносить ущерб любому иному праву Шах. Никакое частичное использование любого права, полномочия или привилегии по настоящему Договору не препятствует какому-либо иному или дальнейшему использованию таковых, и никакое использование любого права, полномочия или средства правовой защиты не препятствует использованию любого иного права, полномочия или средства правовой защиты. Все заявления об отказе от прав или согласии, предоставленные по настоящему Договору, оформляются в письменном виде и подписываются каждой стороной, предоставляющей отказ от права.

### Раздел 10.02. Передача прав

Настоящий Договор автоматически прекращает свое действие по истечении Срока. По прекращении действия настоящего Договора Шах, по просьбе и за счет Общества, передает Обществу все права Шах в отношении Российского Счета, и предоставляет такие инструкции и указания, которые могут потребоваться для осуществления такой передачи. Шах также возвращает Обществу (i) все доверенности, выданные Шах или любому его представителю в отношении

of the Company, any other document or instrument in Shah's possession that may give any rights or powers to, or in respect of, any Russian Account.

любого из Российских Счетов и (ii) по требованию и за счет Общества – любой иной документ или инструмент, находящийся у Шах, согласно которому могут предоставляться любые права или полномочия на любой Российский Счет, или в отношении такового.

### Section 10.03.    Notices

Any notice or request required or permitted to be given or made under the terms of this Agreement shall be in writing. Such notice or request shall be deemed to have been duly given or made when it shall be delivered by hand, mail or telefax to the party to which it is required or permitted to be given or made at such party's address specified below or at such other address as such party shall have designated by notice to the party giving such notice or making such request.

### Раздел 10.03. Уведомления

Любое уведомление или запрос, требующиеся или допускаемые по условиям настоящего Договора должны оформляться в письменном виде. Такое уведомление или запрос будут считаться направленными должным образом, если они будут вручены лично, направлены почтой или телексом для стороны, которой их необходимо или допустимо направить, по адресу данной стороны, указанному ниже, или по другому адресу, который будет сообщен такой стороной той стороне, которая направляет соответствующее уведомление или запрос.

For Shah:

Bipin Shah
425 East 58th Street
Suite 43H
New York, New York 10022
United States of America
Fax No. (212) 832-5333

Для Шах:

Bipin Shah
425 East 58th Street
Suite 43H
New York, New York 10022
United States of America
Факс: (212) 832-5333

and

Andrew E. Lippmann, Esq
345 Park Avenue – 19th Floor
New York, N.Y. 10154-0037
United States of America
Fax No. (212) 202-7690

и

Andrew E. Lippmann, Esq
345 Park Avenue – 19th Floor
New York, N.Y. 10154-0037
United States of America
Факс: (212) 202-7690

For the Company:

Limited Liability Company
"Investment Lottery company"

Для Общества:

Общество с ограниченной ответственностью "Инвестиционная Лотерейная компания"

Attention: Dr. Atik Zamman
Yana Rainisa Boulevard, Building 1

Вниманию: Доктора Атика Замана
Россия, г. Москва, 125363

125363 Moscow, Russia
Fax: +7 095 787 5221

бульвар Яна Райниса, д. 1
Факс: +7 095 787 5221

For the Passport Bank:

Obibank Ltd
Attention: _____
13 Donskaya Street, Building 1
119049 Moscow, Russia
Fax: _____

Для Паспортного Банка:

ООО КБ "Обибанк"
Вниманию: _____
Россия, г. Москва, 119049
улица Донская, дом 13, строение 1
Факс: _____

### Section 10.04.    English Language

This Agreement has been made in both the English and Russian languages. In the event of a conflict in meaning between the English and Russian versions of the executed copy of this Agreement, the English version of the executed copy of this Agreement shall prevail, and such English version shall be the only version considered by any court or arbitration tribunal. All documents to be furnished or communications to be given or made under this Agreement shall be in the English language, or, if in another language, shall be accompanied by a translation into English certified by the Company or the Passport Bank, which translation shall be the governing version among the Company, the Passport Bank and Shah. At the request of the Passport Bank, Payments Orders and Payment Demands submitted to the Passport Bank in the English language should be accompanied by their translation into Russian, the original English version of the relevant document being the governing version among the Company, the Passport Bank and .

### Раздел 10.04. Английский язык

Настоящий Договор составлен на английском и русском языках. В случае расхождений между английской и русской версиями подписанной копии настоящего Договора английская версия подписанного экземпляра настоящего Договора будет иметь преобладающую силу, и только она подлежит принятию во внимание судебными органами или третейским судом. Все документы или сообщения, подлежащие предоставлению согласно настоящему Договору, составляются на английском языке либо, если они составлены на ином языке, сопровождаются переводом на английский язык, заверенным Обществом или Паспортным Банком, и такой перевод будет иметь преобладающую силу для Общества, Паспортного Банка и Шах. По запросу Паспортного Банка Платежные Поручения и Платежные Требования, направленные Паспортному Банку на английском языке, должны сопровождаться переводом на русский язык, при этом английская версия соответствующего документа будет иметь преобладающую силу для Общества, Паспортного Банка и .

### Section 10.05.    No Limitation of remedies

(a)     To the extent permitted by applicable law, Shah may enforce or request enforcement of any provision of this

### Раздел 10.05. Отсутствие ограничений в отношении средств правовой защиты

(a)     В пределах, разрешенных применимым законодательством, Шах может осуществить принудительное

Agreement and the rights granted under this Agreement without having first to exercise any other remedy available to Shah or to enforce any other security or rights that Shah may otherwise have against the Company or its property or assets.

применение или потребовать принудительного применения любого положения настоящего Договора и прав, предоставленных по настоящему Договору, без необходимости использования до этого любого иного средства правовой защиты, имеющегося у Шах, или в принудительном применении любого иного обеспечения или прав, которыми Шах может располагать на иных основаниях в отношении Общества либо его имущества или активов.

(b)     To the extent permitted by applicable law, each of the Company and the Passport Bank expressly agrees that it will not be entitled to any demand, protest or other notice of any kind prior to the taking of any action to enforce or request the enforcement of this Agreement, and that it will not be a defense to any enforcement proceeding that any demand, protest or other notice of any kind was not given to it.

(b)     В пределах, разрешенных применимым законодательством, как Общество, так и Паспортный Банк прямо выражают свое согласие с тем, что каждый из них не будет иметь права на предоставление любого требования, протеста или иного уведомления любого рода до осуществления каких-либо действий с целью обеспечения принудительного исполнения или с целью заявления требования о принудительном исполнении настоящего Договора, и тот факт, что какое-либо требование, протест или иное уведомление любого рода не было предоставлено кому-либо из них, не будет являться защитой против осуществления исполнительного производства.

(c)     This Agreement shall not be construed as limiting or in any way precluding the exercise by Shah of any rights and powers it may have under applicable law.

(c)     Настоящий Договор не должен истолковываться как договор, ограничивающий осуществление Шах или каким-либо образом препятствующий осуществлению Шах любых прав и полномочий, которые Шах может иметь в соответствии с применимым законодательством.

## Section 10.06.    Governing Law

## Раздел 10.06. Регулирующее право

This Agreement shall be governed by, and construed in accordance with, the laws of the Russian Federation.

Настоящий Договор регулируется и истолковывается в соответствии с законодательством Российской Федерации.

## Section 10.07.    Arbitration

## Раздел 10.07. Арбитраж

(a)     Any dispute under this Agreement

(a)     Все споры по настоящему

shall be referred to and finally resolved by arbitration in accordance with the Rules of Arbitration ("**Rules**") of the London Court of International Arbitration ("**LCIA**"), and such Rules are considered as part of this Section. The tribunal shall consist of three arbitrators appointed by LCIA as the nominating authority in accordance with the Rules. The seat of arbitration shall be London. The language of the arbitration proceedings shall be English.

(b)    Section 10.07(a) shall not prevent Shah from taking proceedings in any other court for enforcement of an arbitration award, or for interim or injunctive relief in connection with arbitration proceedings.

### Section 10.08.    Jurisdiction

This Agreement and any rights of Shah arising out of or relating to this Agreement may, at the option of Shah only, be enforced by it in the courts of the Russian Federation located in Moscow, the courts of England or in any other courts having jurisdiction.

### Section 10.09.    Successors and Assigns

(a)    This Agreement shall bind and inure to the benefit of the respective successors and assigns of its parties, except that the Company and the Passport Bank may not assign or transfer any of their respective rights and obligations under this Agreement without the prior consent of Shah.

(b)    Shah may at any time assign any of its rights under this Agreement to any other

---

Договору будут передаваться на рассмотрение и для окончательного разрешения в соответствии с регламентом ("**Регламент**") Лондонского международного арбитражного суда в Лондоне, Англия ("**ЛМАС**"). Данный Регламент считается составной частью настоящего Раздела. Споры будут рассматриваться тремя арбитрами, назначаемыми ЛМАС в соответствии с Регламентом. Местом арбитража будет Лондон. Споры будут слушаться на английском языке.

(b)    Условия Раздела 10.07(a) не препятствуют Шах инициировать разбирательство в любом другом суде для целей принудительного исполнения арбитражного решения, либо для целей принятия обеспечительных мер или судебного запрета в связи с арбитражным разбирательством.

### Раздел 10.08. Юрисдикция

Шах может, исключительно по своему усмотрению, обеспечить принудительное исполнение настоящего Договора и любых прав Шах, возникающих по, или в связи с настоящим Договором, в судах Российской Федерации, находящихся в г. Москве, судах Англии или любых других судах, имеющих соответствующую юрисдикцию.

### Раздел 10.09. Правопреемники и цессионарии

(a)    Настоящий Договор является обязательным для, и юридически действует в пользу соответствующих правопреемников и цессионариев сторон настоящего Договора, за тем исключением, что Общество и Паспортный Банк не могут уступать или передавать любые из своих соответствующих прав и обязательств по настоящему Договору без предварительного согласия Шах.

(b)    Шах может в любое время уступить любое из своих прав по

person.

настоящему Договору любому иному лицу.

### Section 10.10.    Severability

### Раздел 10.10. Делимость

If, at any time, any provision of this Agreement is or becomes illegal, invalid or unenforceable in any respect under applicable law of any jurisdiction, such illegality, invalidity or unenforceability shall not affect:

Если в какой-либо момент любое положение настоящего Договора окажется или станет незаконным, недействительным или неисполнимым в принудительном порядке в любом отношении согласно применимому праву любой юрисдикции, такая незаконность, недействительность или неисполнимость в принудительном порядке не отразится на:

(i)    the legality, validity or enforceability of the remaining provisions of this Agreement which shall be deemed severable; or

(i)    законности, действительности или исполнимости в принудительном порядке остальных положений настоящего Договора, которые считаются делимыми; либо

(ii)    the legality, validity or enforceability of such provision under applicable law of any other jurisdiction.

(ii)    законности, действительности или исполнимости в принудительном порядке такого положения согласно применимому праву другой юрисдикции.

The Company, the Passport Bank and Shah expressly agree that each provision and all provisions of this Agreement would have been concluded despite any invalidity or nullity of any other provision or provisions of this Agreement. The Company, the Passport Bank and Shah shall, in the case of any such invalidity or nullity, take all acts reasonably necessary in order to realize the intention of the invalid or null and void provision, including making any amendments or supplements to this Agreement, all the while adhering to any applicable laws or regulations.

Общество, Паспортный Банк и Шах прямо выражают свое согласие с тем, что каждое положение и все положения настоящего Договора были бы заключены, несмотря на любого рода недействительность или ничтожность любого другого положения или положений настоящего Договора. В случае любой такой недействительности или ничтожности Общество, Паспортный Банк и Шах предпримут все действия, обоснованно необходимые для реализации цели недействительного и ничтожного положения, включая внесение всех изменений и дополнений в настоящий Договор, однако при неизменном соблюдении любого применимого законодательства и норм.

### Section 10.11.    Change of Circumstances

### Раздел 10.11. Изменение обстоятельств

The Company, the Passport Bank and Shah hereby acknowledge and agree that a substantial change in circumstances shall not

Общество, Паспортный Банк и Шах настоящим подтверждают и выражают свое согласие с тем, что существенное

constitute a basis for modification or termination of this Agreement by the Company or the Passport Bank pursuant to Article 451 of the Civil Code of the Russian Federation.

изменение обстоятельств не является основанием для изменения или расторжения настоящего Договора Обществом или Паспортным Банком в соответствии со Статьей 451 Гражданского Кодекса Российской Федерации.

**Section 10.12.    Number    of    Signed Originals**

**Раздел 10.12. Число        подписанных оригиналов**

This Agreement may be signed in any number of signed originals, each of which will be considered to be an original, but all of which shall together constitute one and the same agreement.

Настоящий Договор может быть подписан в любом количестве оригинальных экземпляров, каждый из которых будет считаться оригиналом, а все они вместе будут составлять один и тот же договор.

| | |
|---|---|
| The Company, Shah and the Passport Bank have caused by their duly authorized officers this Agreement to be signed in their respective names as of the date written in the Preamble of this Agreement. | Общество, Шах и Паспортный Банк обеспечили подписание настоящего Договора своими надлежащим образом уполномоченными должностными лицами, от их имени в дату, указанную в Преамбуле настоящего Договора. |

**SIGNATURES OF THE PARTIES**   **ПОДПИСИ СТОРОН**

**LIMITED    LIABILITY    COMPANY "INVESTMENT LOTTERY COMPANY"**

**ОБЩЕСТВО С ОГРАНИЧЕННОЙ ОТВЕТСТВЕННОСТЬЮ "ИНВЕСТИЦИОННАЯ ЛОТЕРЕЙНАЯ КОМПАНИЯ"**

By:
Name:
Title:

By:
Name:
Title: Chief Accountant
Seal

Подпись:
Ф.И.О.:
Должность:

Подпись:
Ф.И.О.:
Должность: Главный бухгалтер
Печать

**COMMERCIAL BANK "OB'EDINENNYI INVESTITSIONNYI BANK" (LIMITED LIABILITY COMPANY)**

**ОБЩЕСТВО С ОГРАНИЧЕННОЙ ОТВЕТСТВЕННОСТЬЮ КОММЕРЧЕСКИЙ БАНК "ОБЪЕДИНЕННЫЙ ИНВЕСТИЦИОННЫЙ БАНК"**

By:
Name:
Title:

By:
Name:
Title: Chief Accountant
Seal

Подпись:
Ф.И.О.:
Должность:

Подпись:
Ф.И.О.:
Должность: Главный бухгалтер
Печать

**BIPIN SHAH – Lender**

Name:
Title: BIPINCHANDRA SHAH
LENDER

**БИПИН ШАХ - Займодатель**

Ф.И.О.: BIPINCHANDRA SHAH
Должность: LENDER

**Exhibit D**

FIRST EXTENSION AND MODIFICATION AGREEMENT (this "Modification Agreement" or "Agreement") dated and effective as of September 27, 2005 (the "Effective Date") by and among RLI PARTNERS, LIMITED ("RLI"), and LIMITED LIABILITY COMPANY, "INVESTMENT LOTTERY COMPANY"(collectively, "Borrower"); and BIPINCHANDRA SHAH ("Lender").

### Background

A. Borrower and Lender entered into that certain Loan Agreement dated as of July 29, 2005 (as the same may be amended, modified or restated from time to time, the "Loan Agreement") pursuant to which Lender agreed to make a $3,000,000 Loan to Borrower.

B. The Loan Agreement required that the Loan be repaid in full on the Termination Date of September 27, 2005, and Borrower was and has been unable to repay the Loan and an Event of Default has occurred with respect thereto.

C. Borrower has requested that Lender extend the maturity date of the Loan and Lender has agreed to do so provided Borrower enter into this Modification Agreement.

### Agreement

The parties agree as follows:

1.    Defined Terms. Capitalized terms used herein without definition and which are defined in the Loan Agreement are used herein with the meaning given to such terms in the Loan Agreement.

2.    Modifications of Loan Agreement.

(a)    The Loan Agreement is hereby modified as follows:

(i)    The Base Rate as defined in Section 1.1 of the Loan Agreement is hereby amended to be fifteen percent (15%) per annum from and after the period commencing on September 27, 2005. All interest under the Loan shall continue to accrue under the Loan at the Base Rate and shall be due and payable on the Termination Date, as extended pursuant to paragraph (ii) below.

(ii)    The Termination Date is extended to January 17, 2006, time of the essence as to such final date. Borrower acknowledges and agrees that repayment of all Obligations due and owing under the Loan on such date is a material inducement to Lender agreeing to the extension and if Borrower fails to repay all amounts of principal, interest and other Obligations due and owing under the Loan on or before such final date, Borrower, in addition to all such other amounts due, shall pay an additional fee of three percent (3%) of all of such Obligations.

(iii)    Notwithstanding anything to the contrary contained in Section 9.4, Borrower shall pay to Lender within ten (10) days of the date hereof an amount equal to fifty percent (50%) of the attorneys fees of Lender's counsel incurred to date and paid by Lender, and one hundred percent (100%) of such attorney's fees (approximately $5,000) incurred with respect to the default by Borrower and the drafting, preparation and revision of this Modification Agreement.

(iv)    Borrower shall promptly furnish to Lender a bank statement, bank certificate or other proof acceptable to Lender from Commercial Bank "Ob'edinennyi Investitsionnyi Bank" (Limited Liability Company) ("Obibank") indicating that the proceeds of the Loan of USD$3,000,000 continue to be held in a separate account in the name of Borrower and not commingled with any other assets of any other party, have not been withdrawn and may continue to be withdrawn at any time by Lender pursuant to the Loan Documents, the Agreement Granting Rights To Debit the Russian Account dated July 29, 2005 between Lender, ObiBank and Investment Lottery Company, and the Framework Agreement dated July 18, 2005 between Lender, Borrower, ObiBank and certain other parties thereto.

3.    Ratification of Loan Documents. Except as modified hereby, all terms, covenants and conditions of the Loan Documents remain in full force and effect and are hereby ratified and confirmed by each of the parties hereto. Borrower hereby confirms that the outstanding principal balance of the Loan is $3,000,000 and that there is an Event of Default under the Loan Agreement. Borrower and each Guarantor hereby confirms that it, he or she has no offsets, defenses or counterclaims with respect to the Loan Documents to which it, he or she is a party and to the extent any such offset, defense or counterclaim exists without its, his or her knowledge, the same are hereby waived to the fullest extent allowed by law. The modification of the Loan Agreement specified herein is limited precisely as written and shall not be deemed (a) to be a consent to, or waiver of, or modification or amendment of, any other term or condition of the Loan Agreement or any other document referred to therein or (b) to prejudice any right or rights which Lender now has or may have in the future under, or in connection with, the Loan Agreement. Borrower acknowledges and agrees that they will each receive a substantial financial benefit from the execution of this Modification Agreement.

4.    Successors and Assigns: No Waiver. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns. Any partial payment amounts made by the Borrower or any other party on the Borrower's behalf and accepted by Lender will not constitute a waiver of any default, waiver of demand, or waiver of any other right held by Lender under the Loan Documents including this Modification Agreement.

5.    Jurisdiction, Venue, Service of Process.    (a)    ANY LEGAL ACTION OR PROCEEDING WITH RESPECT TO THIS AGREEMENT OR ANY LOAN DOCUMENT SHALL BE BROUGHT, AT LENDER'S OPTION, IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION SITTING IN NEW YORK COUNTY, NEW YORK.

BORROWER HEREBY ACCEPTS FOR ITSELF AND IN RESPECT OF ITS PROPERTY, GENERALLY AND UNCONDITIONALLY, THE NON-EXCLUSIVE JURISDICTION OF THE AFORESAID COURTS. BORROWER IRREVOCABLY CONSENTS TO THE SERVICE OF PROCESS OUT OF ANY OF THE AFOREMENTIONED COURTS IN ANY SUCH ACTION OR PROCEEDING BY THE MAILING OF COPIES THEREOF BY REGISTERED OR CERTIFIED MAIL, POSTAGE PREPAID, TO BORROWER AT ITS ADDRESS FOR NOTICES PURSUANT TO SECTION 9.2 OF THE LOAN AGREEMENT. BORROWER HEREBY IRREVOCABLY WAIVES ANY OBJECTION WHICH THEY MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY OF THE AFORESAID ACTIONS OR PROCEEDINGS ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT OR ANY LOAN DOCUMENT BROUGHT IN THE COURTS REFERRED TO ABOVE AND HEREBY FURTHER IRREVOCABLY WAIVES AND AGREES NOT TO PLEAD OR CLAIM IN ANY SUCH COURT THAT ANY SUCH ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. NOTHING CONTAINED HEREIN SHALL AFFECT THE RIGHT OF LENDER TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR TO COMMENCE LEGAL PROCEEDINGS OR OTHERWISE PROCEED AGAINST BORROWER IN ANY OTHER JURISDICTION.

6. Counterparts. This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument and any of the parties hereto may execute this Agreement by signing any such counterpart.

IN WITNESS WHEREOF, the parties hereto have caused this Modification Agreement to be duly executed and delivered as of the day and year first above written.

RLI PARTNERS, LIMITED

By: _____
Name: Richard Olsen
Title: Chairman

LIMITED LIABILITY COMPANY,
"INVESTMENT LOTTERY COMPANY"

By: _____
Name: Dr. Atik Zamman
Title: Director General

3

Bipinchandra Shah